May it please the Court, Evan Ng is no longer a varsity gymnast at the University of Minnesota for one reason. The university chose to reduce its number of male athletes. As a result of the university's decision, it eliminated its men's gymnastics team, causing Mr. Ng to lose one season of competition so far, and he will undoubtedly lose a second season this upcoming winter and spring. But this Court's reversal of the District Court's denial of Mr. Ng's motion for preliminary injunction would allow him the opportunity to compete in his remaining two years of eligibility, and would also immediately return him to his status as a varsity athlete, allowing him to immediately enjoy the benefits that accompany that status. How could that occur immediately, since the program has been disbanded, the coaches are gone? It seems that that could happen at some point in the future, given substantial expenditures and many other decisions that would need to be made. How could that happen immediately? It would happen immediately by issuing a preliminary injunction that would order the university to reinstate the team, which would start the ball rolling for rehiring coaching staff, recruiting and whatnot. But Mr. Ng's status would then be, he was now again a part of the reinstated team, and so he would again enjoy the benefits that accompany that status. What's the realistic timeframe for the resumption of competitive gymnastics if it were reinstated? There's no clear answer in the record to that. I think the university's briefing alludes to a timeline to rehire coaches and recruit. I think it's helpful that the university has retained ownership of the men's gymnastics gym, as well as all the equipment. So essentially we're looking at the need to rehire our coaching staff and start recruiting. Would that occur during the timeframe of Mr. Ng's matriculation? I think it would, but again, there's no clear answer to that in the record, Your Honor. What year is he now, right now? He's currently a junior, but because- He's still at the University of Minnesota. Correct. Beyond this year, he has his senior season. Then because Mr. Ng began university during the COVID-19 pandemic, the NCAA granted all student-athletes one additional year to kind of make up for either the lost or just the very different seasons. So assuming, as we do, that this upcoming season, which would have otherwise began in January, is lost, he would have two remaining seasons. And so I would certainly hope that if this court does reverse and order an injunction to be issued, that our expectation is the university would act expeditiously to start that ball rolling to ensure an opportunity for Mr. Ng to compete before he graduates. Please address the district court's analysis that focused on the delay from the time of the announcement of the ending of the program to the filing of this action for preliminary injunction that the court thought should be taken into account in evaluating whether an injunction is appropriate. I think regardless of whether we look at it as a 13-month or a 6-month delay on the facts and circumstances of this case, which this court in the safety clean system case said it is a fact-based inquiry on determining the reasonableness of a delay, I think regardless of whether it's 13 or 6-month, these facts are reasonable. When the decision was formalized in October of 2020, of course, that was an opportunity to file litigation if that was the decision that was made. But Mr. Ng, as well as his teammates, coaches and community supporters who are alumni, decided the best course of action at that time was to use non-litigation efforts to try to persuade the university to reinstate the team. As noted in the record, the decision amongst the regents was close. It was a 7-to-5 vote. I thought the compliance plan was announced in September. I think you just said October. Did you mean September? It was announced in September but voted on and formalized in October. By the board? By the board. Proceed. And so if this Court were to hold that — were to agree with the district court that that initial decision to engage in non-litigation efforts essentially precludes Mr. Ng's ability to seek preliminary relief now, it's going to incentivize future litigants to forego those non-litigation efforts and instead come immediately to court. And if we look at — So now is the next date April? Is April 2021 your best date when the university rejects anything, I think, everything? I think our best date is May when it formally came into place, when all the coaches at that point were terminated and the school year ended. April or May, but I think we can point to May. But in any event, whether it's April or May, what we're looking at is a practical matter. As Mr. Ng at the time had just finished his freshman year of college, he was an unemployed teenager, to expect him to, on his own, find counsel, marshal a case, which in essence is — But he was on scholarship, right? Partial scholarship. What do you mean partial scholarship? Not a full scholarship. So year to year, it fluctuates with the amount of his costs that are covered by scholarship. He still is though, isn't he? Yes, Your Honor. Is he on full or partial now? Now that we've asked about this. It changes year to year. I'm not sure what it is exactly. Okay. Proceed. Go ahead. Well, let me ask another question about the appropriateness of an injunction at this point, or at least something that could be described as a preliminary injunction. At this point, with the program completely disbanded and the preliminary injunction's purpose is to put the parties in — to basically put the conflict in a suspended status, at a status quo before the resolution of the issues. Things seem to have altered substantially from what would have been possible with a traditional preliminary injunction. So it seems like the kind of argument you're making here would really be going to the ultimate merits of a merits decision as opposed to a preliminary injunction. If we were to deny the preliminary injunction or at least to uphold the denial of the preliminary injunction, that doesn't end this litigation, does it? Or does it? Yes and no. There is a pending motion to dismiss that stayed pending the outcome of this case. So depending on how this Court analyzes particularly the merits questions, then the district court might just proceed to dismiss the case. But it might continue on. I think what Your Honor is truly getting at is it's true that this circuit has cases that focus on either maintaining a status quo or restoring. Cases go both ways. So we think it's appropriate. But if at this point a preliminary injunction is put in, it essentially has put the case where it would be had it gone through a determination of the merits. Yes and no. I think the Roberts case from the Tenth Circuit that involved Colorado State University is instructive on this question. A similar issue was raised in that case whether ordering the university to reinstate its women's softball team would essentially be a permanent injunction. And the way the Court approached the question there was because the case was brought by individual plaintiffs who had an end date in their eligibility as students, the preliminary relief would only go toward their immediate benefit. So at the end of their eligibility, it was — in other words, it wasn't a class action case. This case, only Mr. Ng is the plaintiff, so this would be a similar scenario. If at the time those would provide an opportunity, if appropriate, for the university to move the Court to dissolve the injunction, and that would, of course, be an option available to the university here if the facts warranted that scenario. So while it might on the surface appear that a preliminary injunction would ultimately resolve the case, specifically regarding Mr. Ng, I don't think that's correct. But also in our complaint, we've asked for broader relief as well, particularly declaratory and injunctive relief on the university's reliance on proportionality alone. So there is additional relief requested that is not a part of this motion. We've gone over halfway through your argument without mentioning the Chaloner case. Does it just bind us in every regard? No, Your Honor. I think it's most helpful to quickly take a step back and view what is actually at stake within a Title IX claim that Chaloner addressed. The general rule that Title IX establishes is a general rule of nondiscrimination. And in the athletics context, that means that opportunities to participate in sports cannot be denied or taken away from someone only on the basis of their sex. That's the general rule. Of course, Chaloner recognizes that there are some exceptions to that rule. And Chaloner itself, as well as the multiple cases from other circuits discussed in Chaloner, are engaging in an analysis of whether that specific factual situation of eliminating mostly men's teams in the 90s and early 2000s were sufficient to warrant a departure from that rule. So essentially it's analyzing whether an exception should be made to Title IX's general rule. And in Chaloner, I won't reiterate all of the main four distinctions in the briefing that I think distinguish this case, but all of them are primarily focused on that statistical disparity. And that's the primary factor. And in Chaloner and the other cases, the disparities there were large, significant numbers. And that's just not the case here. Is that a factual finding in the end, reviewed for clear error? No, ultimately it's... Are you sure? Because the district court is setting it up that way. I see why Your Honor would phrase it that way. I think it's ultimately a legal question because the Ports decision, as well as the Beidiger Second Circuit case, even though they say at a certain number that wasn't enough, they're both clear to say that there is no clear dividing line. It's truly a facts and circumstances analysis, which means they're looking beyond what that number is to really see what's going on at the university. And here the only evidence in the record that the university relies on is that number alone. There is no other evidence regarding either of the other two prongs of the 1979 policy interpretations three-part test. It solely relies on that disparity. But we know that in statute section 1681B itself expressly says statistical disparities alone are insufficient for a finding that statute has been violated. And so ultimately, regardless of whether, you know, this Court agrees with our distinctions of Shalinor in that it's really looking at whether an exception applies, if the Court thinks that it does, it would be saying that Title IX permits that action. It's not saying that it is commanded or compelled. I think that is the textual tie to section 1681B. So even if we were to sort of lose on the Title IX claim, that does not doom the equal protection claim because the way it works hand-in-hand with the equal protection claim is that Title IX compliance is the university's primary rationale to attempt to justify the decision under intermediate scrutiny. Do you have a circuit for you on that Sixth and Seventh are basically against you? Your time's short. Do you have a circuit for you? Well, I think... You quote my premise, too, that the Sixth and Seventh... If you're referring to the collateral attack aspect... Yes, exactly. I think I have the U.S. Supreme Court in its 2009 Fitch-Gerald v. Barnstable School Committee case. I think that case renders the Sixth and Seventh Circuit's decisions on this collateral attack point no longer good law. That case was in the context of a Title IX discrimination claim, and the Supreme Court directly held that plaintiffs still have a Section 1983 constitutional claim to raise sex or gender discrimination claims. They do not solely only have the Title IX claim. So I don't think the Sixth and Circuit's decisions can stand after that. But we also have the D.C. Circuit's National Wrestling Coaches' decisions, which said that the proper party as a defendant in a case in this context is the university who made the team elimination decisions, even if they're pointing to Title IX and its regulatory components as a justification. I see my time is remaining short, so I'd like to reserve my remainder. Thank you, Your Honor. Thank you, Your Honor. Mr. Binrood? Good morning. I'd like to start by addressing the irreparable harm question and follow up on some of the questions that were asked previously. The university doesn't dispute that student But as was discussed, the district court found that Appellant's claim of irreparable harm in this case was negated by the delay in pursuing a preliminary injunction. And that decision is consistent with the basic purpose of a preliminary injunction, which, as this Court has held, is to prevent harm by preserving the status quo while the case is being decided. And because Appellant waited a long time before pursuing a preliminary injunction here, his injunction or an injunction at this point, especially now that so much more time has passed, would not preserve the status quo and it wouldn't prevent harm because, as the Court has noted, the team is already gone. No expedited appeal was asked for at any time, right? Sorry, I'm No expedited appeal was asked for at any time, right? That's correct. Proceed with your argument. That's correct. And as the parties have noted in their briefs, there are cases where courts have entered injunctions to delay team eliminations. However, the motions in those cases were all made and the decisions were issued before the teams were actually eliminated. So what we were talking about there wasn't joining the decision, but the decision had not yet been acted upon. So you actually could preserve the status quo. You didn't have to go back and recreate a past status quo. You simply said, well, this decision has been made. We're going to restore things to back before the decision. Counsel, what's the effect of an affirmance of the denial of the preliminary injunction on continuing litigation in this case? We go back and the district court case is put back. This day is taken back and the case proceeds. And as counsel said, there currently is a motion to dismiss pending. The court will hold a hearing on that. It's been briefed. The court will hold a hearing and make a decision. And depending on that decision, the case may end up back here or will be on to discovery and on to the rest of the portions of the case in the district court. And I'll just say, the university isn't... But would you like us to address the merits or not? Well, I think you have to address... Well, one of the elements of injunction and the element that this court has said is the most important is likelihood of success on the merits. So I think both of the parties are expecting that this court will address that argument. And I'll move to that in just one moment. I did want to point out, though, that even though as I've said, there are cases where courts have issued injunctions with regards to team eliminations, we're not aware of any case where that occurred after the team was actually gone. And we're also not aware of any case where that occurred where the court did not also find that the movement had a likelihood of success on the merits. You're aware we've done a lot of cases where we say, even if we assume a likelihood of success on the merits, the inability to demonstrate a threat of irreparable harm weighs against granting a preliminary injunctive relief in the case there. You're aware we have such cases? That's a Sessler case that I was quoting from. Yeah. The ASSLER. I recall... The Statenport 2021 case. Yes. Just a few months ago. Go ahead. Yes. But even so, you want us to get the merits. I know that there are cases where this court has essentially resolved the case at this stage. So it's within this court's purview to do that. Well, I was asking your position. I get the jurisdiction point, but I'm trying to get your position. What's your real position here on the merits? Well, we believe the case shouldn't proceed and we would like to see a decision from this court saying that. Okay. Proceed. Yeah. Go ahead. I'm going to move on to likelihood of success on the merits. Now, this case is one of five federal appellate court decisions that are directly on point on both of the claims. And as has been mentioned, on the Title IX claim, it's a decision from this court. And we do believe that that decision is binding. And we don't believe that appellant has been able to distinguish that case. A couple of things I'll note about the Chaloner case. First, in addition to the fact that it's from this court, it's not an outlier. This court said in Chaloner that every case around the country or every court around the country that has addressed the issue has consistently ruled that compliance can be obtained by either adding positions for the underrepresented gender or eliminating positions for the overrepresented gender. So the court isn't out on a limb in the Chaloner case. The other point I'd make about the other point I'd make is that the three-part test and the other Title IX rules that are cited in Chaloner, at this point, given all of the decisions, those are more than just agency guidances or agency interpretations. They're the established legal principles that have been adopted and relied upon consistently by this court and courts around the country for dealing with these issues. Now, in terms of appellant's desire to distinguish Chaloner, first, there's the if that's true, it's not material as far as the Title IX analysis. Schools are obligated to comply with Title IX. If they're not in compliance, they're expected to return to compliance. It doesn't matter if they're a little noncompliant or a lot noncompliant. The expectation is that there will be compliance. The record here shows that by the end of the 2019-2020 academic year, the university's athletics program was no longer in compliance. The fact that the school in Chaloner might have been worse in terms of its situation really makes no material difference in the Title IX analysis. And the same is true for the arguments about the financial deficit in Chaloner. The record here shows that the university's athletic program had a significant financial deficit even before the COVID pandemic and that the pandemic just made it worse. And again, the fact that the school in Chaloner had a bigger deficit doesn't make a difference in terms of the Title IX analysis. Counsel, are you familiar with the Fitzgerald case? Yes. Would you reply to the concern that Fitzgerald has affected other precedents in this that could be applied to this case? Yes. So the Kelly decision found that the plaintiff's arguments in that case, which were essentially the same, it was essentially the same equal protection argument in the same factual context as this case. And the Second Circuit found that that claim was barred as an impermissible collateral attack on Title IX. Now, before I specifically address Fitzgerald, I'll say that, you know, Appellant says he's not attacking Title IX in this case and maybe he's not making a direct attack on Title IX. But when the university has made a decision to comply with Title IX through a method that this court and other courts in the U.S. Department of Education has said that's consistent with Title IX, well, that might not be a direct attack on Title IX, but if all the university is doing is complying with Title IX, it certainly is an indirect attack on Title IX. Now, with regards to the Fitzgerald decision, the Supreme Court found there that Title IX does not preclude a Section 1983 action alleging unconstitutional gender discrimination and the university doesn't question that. The issue in Kelly and the issue here is whether the specific Section 1983 claim that was in Kelly and that the Appellant is bringing here is an impermissible collateral attack on Title IX. And for all the reasons cited in our brief, we believe it is. So there really isn't a conflict between Kelly and Fitzgerald. How close did the Supreme Court come in Fitzgerald to saying what you're saying? I don't think the Supreme Court got that far because the specific issue in Kelly wasn't before it. They were talking about generally, can you never bring a Section 1983 claim. Do they have the word generally when they're talking? I don't recall whether they've talked specifically. Yes. Yes. So we would argue that for the same reasons as in Kelly, the equal protection argument in this case is barred. I think the next thing I'd like to talk about is I want to go back and make just sort of a couple of general points that I think are important. And that has to do with the fact that what we were talking about here is an overall plan to achieve compliance with Title IX. And we were talking about the individuals' individual savings and that this decision to eliminate the men's gymnastics team was just one part of that larger plan. The appellant really tries to — they don't dwell on that a whole lot. And in one part, they actually ask this Court to ignore the fact that there was a larger plan and really just to focus on the individual decision regarding the men's gymnastics team. But that's really just an artifice. I mean, you can't take this one little bit at a time. And this goes really directly to the principle that this Court confirmed in Chaloner that meeting any one part of the three-part test is sufficient to establish compliance and it doesn't matter whether other options are available. And with regards to the equal protection claim, where the key case there is the Cohen v. Brown University case from the First Circuit, they said the same thing. It doesn't matter whether other options are available. The question is whether the selected option or the chosen option was compliant with Title IX or satisfied the constitutional provisions with regards to the equal protection claim. Now, this is really another way of saying that the law allows schools to exercise discretion in how they achieve compliance and the courts won't seek to substitute their judgment or won't seek to second-guess their decisions so long as there is compliance. And given the complex nature of Division I college athletics, it's not surprising that there might be any number of ways to achieve compliance in a certain instance. However, the law says the issue isn't whether other options were available. The issue is whether the chosen option resulted in compliance. And it's undisputed here that the chosen option in this case did result in compliance and we believe that's where the analysis should end. And you're only relying on substantially proportionate the first one, right? Correct. We relied on Part I of the three-part test. I believe I've covered the important points that I want to cover. If the Court has questions, I'd be happy to answer them. Otherwise, we believe the District Court correctly denied the preliminary injunction in this case, and I'd be happy to confirm that decision. Thank you. A few points, Your Honors. Judge Bitton raised the question of whether an expedited appeal was sought. We did seek an expedited appeal. That was in the notice of appeal. Thank you. Practically speaking, I think we're here as quickly as was possible given the briefing schedule. The question on the Fitch-Gerald case on page 258 of that case I think provides the answer, which is that the Court says we hold that Section 1983 suits based on the Equal Protection Clause remain available to plaintiffs alleging gender discrimination in schools. I think that clearly overrules Kelly and Miami University. I think the key point the University misses in its Title IX justification under our Equal Protection Clause argument is the University has shifted tactics and said, well, this decision was permissible under Title IX. Well, a similar argument was raised in the DM by Bao Chong case before this Court and rejected by this Court. Similar story in the Supreme Court's Mississippi University for Women decision. There in the DM case, the Minnesota State High School League justified single-sex competitive dance on a state statute that permitted single-sex sports, but this Court said whether a statute permits something is no answer to the question of whether it violates the Equal Protection Clause, and that was the exact same analysis and response made by the Supreme Court and Mississippi University for Women. And unless there are any further questions, I see my time is expiring. Thank you, Your Honors.